UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| **FADEL LEFTE KHUDIAR,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | No. 3:15-cv-00408 |
| v. ) | Judge Nixon/Brown |
| ) | |
| **CAROLYN W. COLVIN,** ) | |
| **ACTING COMMISSIONER** ) | |
| **OF SOCIAL SECURITY,** ) | |
| ) | |
| **Defendant.** ) | |

**To: The Honorable John T. Nixon, Senior United States District Judge**

## REPORT AND RECOMMENDATION

Plaintiff brings this action under 42 U.S.C. §§ 405(g) and 1382(c)(3), seeking judicial review of the Social Security Commissioner's denial of his claims for Disability Insurance Benefits (DIB) under Title II of the Social Security Act (the Act), 42 U.S.C. § 423(a), and Supplemental Security Income (SSI) under Title XVI of the Act, 42 U.S.C. § 1381a. The Magistrate Judge **RECOMMENDS** that Plaintiff's Motion for Judgment on the Administrative Record (DE 19) be **DENIED** and that the Commissioner's decision be **AFFIRMED**.

## I.    PROCEDURAL HISTORY

Plaintiff applied for DIB in January 2009 and September 2011. (DE 17, p. 245, 247).[1] Each application was denied. (DE 17, p. 121-122, 124-132). Upon reconsideration, Plaintiff's request for DIB was again denied in January 2012. (DE 17, p. 123, 135-137). Plaintiff later changed his alleged onset date from May 16, 2006, to May 11, 2009. (DE 17, p. 260). In June

---

[1] The page numbers referred to in the administrative record (DE 17) are the blue page numbers (Page X of 871) located in the bottom right corner of the document.

2013, Plaintiff also applied for SSI. (DE 17, p. 67).[2] At Plaintiff's request, an administrative hearing was held in November 2013. (DE 17, p. 83-112).[3] On December 20, 2013, the Administrative Law Judge (ALJ) issued an unfavorable decision, finding that even though Plaintiff could not perform any past relevant work, "there are jobs that exist in significant numbers in the national economy that the claimant can perform." (DE 17, p. 64-77). The Appeals Council declined to review the case. (DE 17, p. 5). This matter is properly before the Court.

## II.　REVIEW OF THE RECORD[4]

### A. Relevant Medical Evidence

In March 2009, Plaintiff was examined by Dr. Albert J. Gomez, M.D., from Tennessee Disability Determination Services. (DE 17, p. 340). Dr. Gomez noted that Plaintiff walked with a stiff neck. (DE 17, p. 341). In addition "[t]here was moderate tenderness to palpation of cervical spine. Flexion and extension both showed 20 degrees. Right lateral flexion 20 degrees and left lateral flexion 0. Right rotation 20 degrees and left rotation 25 degrees." (DE 17, p. 341). "[B]oth shoulders had moderate tenderness to palpation." (DE 17, p. 341). In the section of his report titled "Medical Assessment of Ability to Do Work-Related Activities," Dr. Gomez found that Plaintiff "could occasionally lift 20 pounds in an eight-hour workday. He could stand or sit at least six hours in an eight-hour workday with normal breaks; however [Plaintiff] would have difficulty reaching and lifting overhead. In addition, it is possible that [Plaintiff] was not putting forth his best effort because he did not understand the English language." (DE 17, p. 342).

---

[2] The application for SSI does not appear to be in the administrative record.

[3] An earlier administrative hearing was held in June 2013. Since an interpreter for Plaintiff was not available at that time, the hearing was rescheduled for November 2013. (DE 17, p. 113-120).

[4] The Magistrate Judge incorporates the contents of the administrative record (DE 17) herein. Information pertinent to Plaintiff's claim of error is discussed in greater detail.

Dr. Reeta Misra, M.D., another medical consultant, completed a physical residual functional capacity (RFC) assessment for Plaintiff in April 2009. (DE 17, p. 343-351). Dr. Misra found that Plaintiff could occasionally lift twenty pounds, frequently lift ten pounds, stand or walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, and push and pull without limits. (DE 17, p. 344). Dr. Misra did not find any postural, visual, communicative, or environmental limitations. (DE 17, p. 345-347). The only manipulative limitation noted was a limited ability to frequently reach overhead. (DE 17, p. 346). Plaintiff's allegations and pain were found to be partially credible. (DE 17, p. 350).

Plaintiff visited Nashville General Hospital at Meharry (Meharry) in September 2012. (DE 17, p. 557). He stated that he had shoulder and neck pain, reporting his pain as "three" on a scale of one to ten, with ten being the greatest pain. (DE 17, p. 557, 560). An x-ray of Plaintiff's cervical spine during this visit revealed "disc space narrowing at the C3-4 and C6-C7 levels with minimal anterior and posterior osteophytes at the C6-C7 level." (DE 17, p. 564). Reporting his pain as "0" and "2" on a scale from one to ten, Plaintiff visited Meharry in October 2012. (DE 17, p. 566, 568-569). The attending physician found tenderness along the scar tissue on Plaintiff's neck and noted an impression of cervicalgia[5] and cervical radiculopathy.[6] (DE 17, p. 568). Again in November 2012, the attending physician at Meharry noted an impression of cervicalgia. (DE 17, p. 717). An exam at Meharry in December 2012 found degenerative disc disease at the C3-4 and C6-7 levels. (DE 17, p. 713). The results of a CT in January 2013 showed "multilevel degenerative disease, worse at C3-C4 and C6-C7 with mild narrowing of the central canal." (DE 17, p. 744). In February 2013, Plaintiff reported his pain as "0." (DE 17, p.

---

[5] Cervicalgia refers to neck pain. 1 *ICD-9 CM Table of Diseases and Injuries* § 723.1 (6th ed. 2014).

[6] Cervical radiculopathy is defined as "[disease or compression] of cervical nerve roots, often with neck or shoulder pain." Elsevier Saunders, *Dorland's Illustrated Medical Dictionary* 1571 (32nd ed. 2012).

742). During this visit, the attending physician at Meharry noted an impression of cervical radiculopathy, degenerative disc disease, and spinal stenosis, and considered a referral to spinal surgery. (DE 17, p. 751). This again was confirmed in a March 2013 visit to Meharry. (DE 17, p. 754). The health care provider found cervical radiculopathy, multilevel disc disease, osteophytes, and uncontrolled pain. (DE 17, p. 754). Plaintiff declined an epidural injection, and instead received a cervical collar. (DE 17, p. 754). At Plaintiff's next appointment in May 2013, the attending physician at Meharry noted cervicalgia, cervical radiculopathy, and a maladjusted cervical collar. (DE 17, p. 760). After examining Plaintiff in June 2013, Plaintiff's physicians did not suggest surgery. (DE 17, p. 765). Another CT in July 2013 states "[c]ervical spondylosis noted with disc space narrowing at the C3-C4 and C6-C7 levels with early anterior posterior osteophytes noted. No significant central or foraminal spinal stenosis noted." (DE 17, p. 766). To treat his pain, Plaintiff was prescribed gabapentin, naproxen, flexeril, Tylenol 3, and tramadol. (DE 17, p. 713, 749, 751, 764).

### B. The Administrative Hearing

During the November 2013 administrative hearing, the ALJ pointed out that Plaintiff was wearing a neck brace which he had not worn in June of that year. (DE 17, p. 91). Plaintiff stated that he had been given the brace by doctors a long time ago because his neck was broken. (DE 17, p. 91). Plaintiff stated that he had undergone surgery on his neck once before and would have a second one in the future. (DE 17, p. 91-92).

The ALJ posed the following three hypotheticals to the vocational expert present at the hearing:

> (1) This person can lift or carry 20 pounds on occasion and ten pounds frequently. This person can sit, stand, or walk for six hours total each. ***This person can occasionally twist and/or pivot the neck.*** This person can occasionally reach overhead with the right upper extremity. In addition, this person is limited to

> unskilled, simple tasks and instructions [i.e., one to three steps]. This person can attend to and complete such tasks and instructions for periods of at least two hours at one time. This person can have occasional interaction with the general public; can handle occasional changes in the work place routine, setting, or location; and should perform no work that requires reading or writing as part of the regular job duties . . . such as completing forms or paperwork on a regular basis.
>
> (2) The same person . . . can lift or carry 20 pounds; sit or stand for six hours total each. The person can occasionally reach or lift overhead with the bilateral upper extremities. This person [has] the same mental limitations [as in the first hypothetical].
>
> (3) [In addition to the limitations in the second hypothetical,] due to pain and fatigue, this person would need to either lie down or rest on occasion, as needed, and would also be off task about ten to 15 minutes per hour.

(DE 17, p. 104-109) (emphasis added). The vocational expert concluded that no work would be available to Plaintiff under the first or third hypotheticals. (DE 17, p. 105-107, 109). Under the second hypothetical, the following jobs could be accomplished: production assembler, electronic assembler or electronic worker, fast-food worker, and finisher. (DE 17, p. 107-108).

Plaintiff's attorney asked whether a similar individual who needed weekly "refresher training" or needed to miss two or more days of work per month was employable. (DE 17, p. 110). The vocational expert stated that no jobs would be available. (DE 17, p. 110).

### III. ANALYSIS

#### A. Standard of Review

The Commissioner of Social Security is responsible for determining whether an individual is disabled within the meaning of the Act. 42 U.S.C. § 405(h). This Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner followed the correct legal standards in reaching that conclusion. *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014) (citation omitted). Substantial evidence is quantified as "less than a preponderance but more than a scintilla; it refers to relevant

evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted). If the Commissioner does not comply with the applicable legal standards, the Commissioner's decision might not be supported by substantial evidence. *Id.*

### B. Administrative Proceedings

Receipt of DIB and SSI is conditioned on the claimant being "disabled" within the meaning of the Act. 42 U.S.C. §§ 423(a)(1)(E) and 1381a. In this context, disability refers to "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); *see also* 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). The Commissioner uses the following five-step process to determine if an individual is disabled:

(1) If the claimant is engaged in substantial gainful activity, the claimant is not disabled.

(2) If the claimant's physical or mental impairment, or combination of impairments, is not severe or does not meet the applicable duration requirement, the claimant is not disabled.

(3) If the claimant's impairment(s) meets or equals a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1 and meets the duration requirement, the claimant is presumed disabled, and the inquiry ends.

(4) Based on the claimant's RFC, if the claimant can still perform past relevant work, the claimant is not disabled.

(5) If the claimant's RFC, age, education, and work experience indicate that the claimant can perform other work, the claimant is not disabled.

20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4). The claimant bears the burden of proof for the first four steps; the burden shifts to the Commissioner at the fifth step. *Johnson v. Comm'r of Soc. Sec.*, 652 F.3d 646, 651 (6th Cir. 2011). To satisfy the fifth step, "the Commissioner must identify a significant number of jobs in the economy that accommodate the claimant's [RFC] and

vocational profile." *Id.* This can be accomplished, among other ways, through a vocational expert's testimony. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).

### C. Claim of Error

The Magistrate Judge finds that Plaintiff's claim of error is, in essence, a challenge to the RFC determination made by the ALJ.[7] According to Plaintiff, the ALJ should have relied on the functional limits described in the first hypothetical posed to the vocational expert. (DE 20, p. 13). Instead, the ALJ relied on the vocational expert's response to the second hypothetical in determining that Plaintiff is not disabled.

Specifically, Plaintiff contends that the ALJ should have included a "twisting or pivoting" neck limitation in Plaintiff's RFC.[8] Plaintiff bases this limitation on (1) the consultative examiner report completed by Dr. Gomez, (2) the objective medical evidence in the record, and (3) the fact that the ALJ considered Plaintiff's degenerative disc disease of the cervical spine a severe impairment under step two of the disability analysis.[9] (DE 20, p. 9-13). If the additional limitations should have been included in Plaintiff's RFC, the vocational expert's response to the second hypothetical could not constitute substantial evidence, and the ALJ's finding of "not disabled" would be undermined. (DE 20, p. 8).

#### 1. Standard for Hypotheticals Posed to the Vocational Expert

---

[7] This is confirmed by Plaintiff's Reply brief. (DE 22, p. 2).

[8] The administrative decision states that Plaintiff has the RFC to "lift and carry 20 pounds; sit or stand for 6 hours total each; occasionally reaching or lifting overhead with the bilateral upper extremities; limited to unskilled simple instructions and tasks; can attend to and complete such tasks and instructions for periods of at least 2 hours at a time; occasional interaction with general public; and can handle occasional changes in the workplace routine, setting or location and no reading and writing as part of the regular job duties such as completing form and paperwork." (DE 17, p. 70-71).

[9] At step two of the disability analysis, the ALJ concluded that Plaintiff had the following severe impairments: "degenerative disc disease of the cervical spine, posttraumatic stress disorder, major depressive disorder, osteoarthritis and osteopenia of the left shoulder and right shoulder disorder." (DE 17, p. 69).

7

If a vocational expert's testimony is used to establish that the claimant can perform work, substantial evidence supports the testimony only if the hypothetical question posed "accurately portrays [the claimant's] individual physical and mental impairments."[10] *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (quoting *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987)). The ALJ need only ask questions based on the claimant's RFC; i.e., "what [he or] she can and cannot do." *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004) (internal quotations omitted). Not every "severe" impairment discussed in step two must automatically be included in the hypothetical posed to the vocational expert. *Griffeth*, 217 F. App'x at 429 ("The regulations recognize that individuals who have the same severe impairment may have different RFCs depending on their other impairments, pain, and other symptoms."). The ALJ only needs to include the limitations deemed credible. *Id.* (citing *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)).

### 2. Standard for Assessing a Claimant's RFC

At steps four and five of the disability analysis, the claimant's RFC is considered. SSR 96-8P (S.S.A. July 2, 1996), 1996 WL 374184 at *3; *see also* 20 C.F.R. §§ 404.1545(a)(5) and 416.945(a)(5). "RFC is what an individual can still do despite his or her limitations." SSR 96-8P at *2; *see also* 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1). The evidence in the record is reviewed to determine "the extent to which [the claimant's] medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental

---

[10] Although there exists some debate as to whether the hypotheticals posed to the vocational expert must include all of the claimant's *limitations* as opposed to all of the claimant's *impairments*, this Court has previously adopted the view that "only the claimant's limitations must be included in the hypothetical, so long as such limitations accurately portray the claimant's impairments." *Wix v. Astrue*, No. 3:08-CV-1222, 2010 WL 520565, at *6 n.2 (M.D. Tenn. Feb. 9, 2010); *see Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004); *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

limitations or restrictions that may affect his or her capacity to do work- related physical and mental activities." SSR 96-8P at *2; *see also* 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1).

Determining the claimant's RFC is distinct from assessing whether the claimant has a severe impairment at step two of the disability analysis. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii) and 416.920(a)(4)(ii). The Sixth Circuit has clarified that the second step is a "de minimis hurdle." *Griffeth*, 217 F. App'x at 428 (quoting *Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1988)). To classify an impairment as "severe," the claimant need only show that the impairment has "more than a minimal effect on the claimant's ability to do basic work activities." *Id.* (quoting SSR 96-3P (S.S.A. July 2, 1996), 1996 WL 374181 at *2) (internal quotations removed). That being so, "[a] claimant's severe impairments may or may not affect his or her [RFC]. One does not necessarily establish the other." *Id.* at 429 (citation omitted).

The effect of symptoms, such as pain, on a claimant's RFC is evaluated in a two-step process. 20 C.F.R. §§ 404.1529 and 416.929. The ALJ must first find that the claimant suffers from medically determinable impairments which could reasonably be expected to cause the alleged symptoms. *Id.* §§ 404.1529(b) and 416.929(b). Once that is established, the ALJ evaluates the intensity and persistence of the claimant's symptoms and determines the extent to which they limit the claimant's ability to work. *Id.* §§ 404.1529(c) and 416.929(c). Factors considered include: medical evidence; evidence from treating or non-treating sources; the claimant's daily activities; the location, frequency, and intensity of pain and symptoms; factors precipitating and aggravating the symptoms; the dosage, effectiveness, and side effects of pain medication; other treatments; and other factors concerning the claimant's functional limitations. *Id.* §§ 404.1529(c)(3) and 416.929(c)(3).

"[W]henever the [claimant's] statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the [claimant's] statements based on a consideration of the entire case record." SSR 96-7P (S.S.A. July 2, 1996), 1996 WL 374186 at *2; *see also* 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4). Great deference is given to the ALJ's credibility assessment. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 392 (6th Cir. 2004). The Court reviews the ALJ's credibility decision to see whether it is reasonable and supported by substantial evidence. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003).

### 3. The ALJ's RFC Assessment Is Supported by Substantial Evidence

The RFC relied on by the ALJ is supported by substantial evidence. As shown by the lengthy administrative decision, the ALJ conducted an exhaustive analysis of the record to determine the limitations posed by Plaintiff's impairments. While the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms, . . . [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (DE 17, p. 72).

Plaintiff contends that his RFC assessment should have contained limitations regarding twisting or pivoting his neck. The ALJ found that even though objective medical evidence established degenerative disc disease of the cervical spine, the material in the record did not support Plaintiff's subjective claims of intense pain and functional problems. (DE 17, p. 72-73). The ALJ's discussion of the topic thoroughly explored the record, including: the consultative report from Dr. Gomez, Plaintiff's medical records from Nashville General Hospital, and Plaintiff's testimony from the administrative hearing. (DE 17, p. 72-73). Finding that Plaintiff's subjective claims were not entirely credible, the ALJ explained:

> The claimant has made complaints of neck and left shoulder pain, but the claimant's subjective reports of pain are disproportionate to imaging reports of the claimant's cervical spine and left shoulder that fail to demonstrate any significant abnormalities. The claimant was not thought to be a candidate for surgical intervention. It is reasonable to assume that the claimant's pain symptoms would [be] manageable with his willingness to try other conservative measures such as epidural steroid injections.

(DE 17, p. 74-75). The ALJ noted that in addition to being offered an epidural steroid injection to treat his pain, Plaintiff was also prescribed gabapentin and tramadol for pain relief. (DE 17, p. 73). However, since Plaintiff did not submit treatment records after these drugs were prescribed, the ALJ was not able to determine the drugs' effect. (DE 17, p. 73). Additionally, the ALJ noted, while being treated for shoulder and neck pain, Plaintiff "mostly reported his pain to be in the range of zero to three on the pain scale [and Plaintiff] also mostly denied functional problems." (DE 17, p. 72-73).

With reference to Plaintiff's one-time examination with Dr. Gomez in 2009, the ALJ noted that Plaintiff had a "decreased range of motion in his neck and shoulders." (DE 17, p. 72). The ALJ did not, however, include Dr. Gomez's findings of limited neck flexion and extension in Plaintiff's RFC. This is not surprising, since Dr. Gomez himself did not find that Plaintiff's ability to do work-related activities was affected by his neck limitations. (DE 17, p. 342).[11] Furthermore, since Dr. Gomez was a one-time examiner, not a treating source, the ALJ was not required to explain the reason for omitting some of Dr. Gomez's findings from Plaintiff's RFC. *See Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) (stating that an ALJ is only required to explain his or her reasons for rejecting a treating source's opinion). The ALJ did, however, suggest that Dr. Gomez's examination did not fully capture Plaintiff's physical

---

[11] Although the ALJ did not stress this point, which would have been helpful, the Magistrate Judge finds that it further supports the ALJ's RFC determination.

11

abilities, stating "[s]ubsequent examinations suggest that [Plaintiff] has greater muscle strength than demonstrated during this examination." (DE 17, p. 72).

The ALJ also noted an inconsistency in Plaintiff's testimony during the administrative hearing: "[t]he claimant testified [in November 2013] that he was prescribed a neck collar a long time ago, but it appears from treatment records that the claimant was prescribed a cervical collar around May 201[3]." (DE 17, p. 73). The ALJ concluded that Plaintiff's impairments would limit his ability to reach and lift overhead. (DE 17, p. 71). Beyond this, Plaintiff's claims were unsubstantiated.

The Magistrate Judge is unwilling to second-guess the ALJ's credibility assessment, for the ALJ had the benefit of not once, but twice, meeting Plaintiff. (DE 17, p. 83, 113). Objective medical records show that Plaintiff has degenerative disc disease, but the functional limitations alleged are not likewise supported. Consequently, the ALJ could rely on the vocational expert's response to the second hypothetical in concluding that Plaintiff is not disabled.

## IV. RECOMMENDATION

The Magistrate Judge **RECOMMENDS** that Plaintiff's Motion for Judgment on the Administrative Record (DE 19) be **DENIED** and that the Commissioner's decision be **AFFIRMED**.

Under Fed. R. Civ. P. 72(b), the parties have fourteen (14) days, after being served with a copy of this Report and Recommendation (R&R) to serve and file written objections to the findings and recommendation proposed herein. A party shall respond to the objecting party's objections to this R&R within fourteen (14) days after being served with a copy thereof. Failure to file specific objections within fourteen (14) days of receipt of this R&R may constitute a waiver of further appeal. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 155 *reh'g denied*,

474 U.S 1111 (1986); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004).

    **ENTERED** this 8th day of October, 2015

                                                        <u>s/ Joe B. Brown</u>
                                                        Joe B. Brown
                                                        U.S. Magistrate Judge